IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANTHONY A. DEVIVO,

      Petitioner,

                        Civil Action No.
      v.                       9:02-CV-0840 (LEK/DEP)

SUPERINTENDENT, Auburn Correctional Facility,

      Respondent.

_____

APPEARANCES:          _____OF COUNSEL:

FOR PETITIONER:

ANTHONY A. DEVIVO
Petitioner, *pro se*

FOR RESPONDENT:

HON. ELIOT SPITZER         PATRICK F. MACRAE, ESQ.
Office of Attorney General     Assistant Attorney General
New York State Attorney General
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

    Petitioner Anthony A. DeVivo, a New York State prison inmate as a

result of convictions in 1998 of burglary in the second degree, first degree

perjury and third degree criminal mischief, has commenced this proceeding

seeking habeas relief pursuant to 28 U.S.C. § 2254.  In support of his

request for federal habeas intervention, petitioner asserts numerous

different grounds for relief, the majority of which were presented to and

rejected by the state courts on direct appeal of his conviction.

Having carefully reviewed the record in light of petitioner's claims, I

find that DeVivo is procedurally barred from obtaining habeas relief as to

the unexhausted claims he asserts in this matter.  Addressing the merits of

the remaining claims raised by DeVivo in this proceeding, in light of the

requisite deferential standard, I recommend that those grounds be denied.

I.    BACKGROUND

According to the testimony adduced at trial, in the early morning

hours of July 26, 1998, the Binghamton Police Department received a call

of a break-in at an apartment located on Lydia Street, in the City of

Binghamton.[1]  *See* Respondent's Appendix on Appeal ("Resp. App.") at

---

[1]    In conjunction with petitioner's direct appeal, neither the district attorney
nor appellate counsel provided the appellate court with a complete copy of the trial
transcript.  Rather, the parties provided to that court only those portions of the trial
transcript which were included within the appendices submitted along with the parties'
appellate briefs.  This court was similarly not provided with a complete copy of the trial
transcript generated during the course of petitioner's trial.  I will therefore cite to the

A79.  Briton Cannon, who was outside of the apartment when the police arrived, informed law enforcement agents that he had recently seen several men enter his apartment without his consent and break many of the items contained within his home.  Resp. App. at A1.  Cannon then provided a police officer with a description of the vehicles used by the perpetrators to flee the scene.  *Id.*  While that officer was speaking with Cannon, Jermaine Fullard approached the officer and provided him with an address on Valley Street in Binghamton, New York at which he believed the suspects could be found.  Resp. App. at A2-3.

Investigating officers proceeded to the address provided to them by Fullard; upon their arrival, they observed vehicles on a nearby street matching the description of the vehicles reportedly used by the alleged perpetrators.  Resp. App. at A3.  Binghamton Police Officer Carl Smith then approached the apartment where he believed the suspects might be present and asked several of the occupants if he could enter the residence and speak with them.  Resp. App. at A5.  After obtaining the consent of the occupants, Officer Smith briefly spoke with the individuals in the home and learned that someone was present in a rear bedroom.  Resp. App. at A5-6.

---

appendices filed by the parties with their briefs, or other portions of the state court record, in discussing the evidence offered at trial.

Officer Smith went to the bedroom and observed an individual – later identified as petitioner Anthony DeVivo – feigning sleep on the bed.  Resp. App. at A6-7.  The officers then asked DeVivo and the other individuals to leave the apartment for purposes of participating in a "show up" at which Officer Smith would ascertain whether Cannon or Fullard could positively identify any of the individuals as perpetrators of the burglary.[2]  Resp. App. at A6-8.  Cannon subsequently identified DeVivo as one of the participants of that crime.  Resp. App. at  A8, A31-32.

DeVivo was thereafter arrested and placed in the Broome County Jail based upon his alleged participation in the burglary at the Lydia Street residence.  Resp. App. at A41.  While at that facility, DeVivo allegedly threatened to kill the other individuals who participated in that crime if they implicated DeVivo in the burglary.  Resp. App. at A65, A69.  Additionally, both Fullard and Cannon testified at trial that DeVivo had offered them money in exchange for their agreement to testify falsely at his parole revocation hearing, to the effect that petitioner was not involved in the burglary.  *See* Appellant's Brief at 6.

---

[2]     All of the occupants of the apartment, including DeVivo, agreed to participate in the show up.  Resp. App. at A7.

II.   PROCEDURAL HISTORY

   A.   State Court Proceedings

A Broome County grand jury returned an indictment against DeVivo on November 13, 1998, charging him with the crimes of second degree burglary, in violation of N.Y. Penal Law §§ 20.00 and 140.25; two counts of bribing a witness, in violation of N.Y. Penal Law § 215.00; perjury in the first degree, in violation of N.Y. Penal Law § 210.15;[3] third degree criminal mischief, in violation of N.Y. Penal Law §§ 20.00 and 145.05; and three counts of tampering with a witness in the third degree, in violation of N.Y. Penal Law § 215.11.  *See* Indictment.

On March 29, 1999, Broome County Court Judge Martin J. Smith conducted a pretrial hearing to address a motion filed by petitioner's counsel seeking dismissal of the indictment against DeVivo.  Resp. App. at AA291.  At the conclusion of that proceeding, with the consent of the District Attorney, the trial court dismissed all three counts accusing DeVivo of third degree tampering with a witness.[4]  Resp. App. at AA292-94.  The

---

[3]      The perjury charge alleged that DeVivo committed that crime when he testified before the grand jury that he was not involved in the Lydia Street burglary. *See* Indictment No. 98-707 (Resp. App. at AA3-11) ("Indictment"), Count Four.

[4]      Those counts accused DeVivo of compelling Harold Knox, Kevin Pierce, and Luther Jones, Sr. to provide false testimony at a criminal proceeding.  Indictment, Counts Six through Eight.

5

court also dismissed both bribery counts returned against DeVivo, based upon its finding that the evidence presented to the grand jury was insufficient to sustain those charges.  Resp. App. at AA312.  In dismissing the latter charges, however, the trial court agreed with the prosecution that it nonetheless could offer evidence relating to those dismissed charges in its case against DeVivo on the remaining charges, provided it could establish a proper foundation for the admission of such evidence.  Resp. App. at AA313-14.

DeVivo was ultimately tried in connection with the remaining charges before a jury in Broome County Court, beginning on March 30, 1999, with Judge Smith presiding.  In his defense to the charges DeVivo testified, as he had before the grand jury that indicted him, that although he was in the company of the people who burglarized Cannon's apartment on the evening in question, he was asleep at the time of the criminal activity which occurred at the Lydia Street residence.  Appellant's Appendix ("App.") at AA237-38, 269; *see also* Respondent's Brief on Appeal (1/25/01) at 6.

At the conclusion of his trial, DeVivo was found guilty on all counts.  Resp. App. at AA1.  As a result of the jury's verdict, DeVivo was sentenced as a second felony offender on June 7, 1999 by Judge Smith to a

determinate term of imprisonment of ten years on the second degree

burglary conviction, a consecutive, indeterminate term of three to six years

imprisonment on the first degree perjury conviction, and an indeterminate

term of two to four years imprisonment on the third degree criminal

mischief conviction, with this latter sentence to run concurrently with the

other sentences imposed on DeVivo, yielding a minimum aggregate term

of thirteen years of imprisonment.  Resp. App. at AA1-2, AA346-47.

DeVivo appealed his conviction and sentence to the New York State

Supreme Court, Appellate Division, Third Department.  With the assistance

of counsel, DeVivo argued in his appeal that 1) the burglary and perjury

charges were improperly joined in a single indictment; 2) DeVivo was

improperly tried on both the perjury charge and the burglary charge before

the same jury; 3) the trial court improperly allowed the prosecution to use

evidence relating to the charges it had dismissed from the indictment in the

prosecutor's case-in-chief; 4) DeVivo was improperly forced to participate

in the show-up identification conducted by law enforcement agents on July

26, 1998; 5) the prosecution's summation was improper; and 6) the

sentence imposed was excessive.  *See* Brief in Support of Appeal ("App.

Br.") at 8-17.  The Third Department issued a decision on April 5, 2001

rejecting each of petitioner's contentions and unanimously affirming his conviction and sentence.  *See People v. DeVivo*, 282 A.D.2d 770, 726 N.Y.S.2d 145 (3d Dept. 2001).  On July 5, 2001, New York's Court of Appeals denied DeVivo leave to appeal the Appellate Division's decision. *People v. DeVivo*, 96 N.Y.2d 900, 730 N.Y.S.2d 798 (2001).

In August, 2000, DeVivo filed a motion to vacate his judgment of conviction pursuant to section 440.10 of New York's Criminal Procedure Law ("CPL"); that motion was later supplemented by the petitioner on April 12, 2001.  Dkt. No. 16, Exhs. C, E ("August, 2000 CPL Motion").  The trial court denied petitioner's section 440.10 application by decision and order dated May 9, 2001.  *See* Dkt. No. 29 ("May, 2001 Order").  Leave to appeal that decision was later denied by the Third Department.  Dkt. No. 16, Exh. J.

In September of 2001, DeVivo filed a second CPL motion with the county court.  Dkt. No. 16, Exh. K.  That second application for collateral relief was denied by the trial court in a decision and order dated January 18, 2002.  *See* Dkt. No. 29 ("January, 2002 Order").  Though it is not entirely clear, it appears that DeVivo unsuccessfully sought leave to appeal

8

that unfavorable decision from the Appellate Division.[5]

The record also reflects that on June 10, 2002, DeVivo filed an application with the Appellate Division seeking a writ of error *coram nobis* ("*Coram Nobis* Application").  In that collateral challenge to his conviction, DeVivo claimed, *inter alia*, that he received the ineffective assistance of both trial and appellate counsel.  *See id.*  On August 15, 2002, the Appellate Division denied that application.  *See* Dkt. No. 30.

B.   This Proceeding

DeVivo commenced this matter on June 26, 2002.  Petition (Dkt. No. 1) at 1.  Following routine review of the petition, the assigned District Judge, the Hon. Lawrence E. Kahn, directed DeVivo to pay the filing fee required to maintain this action and ordered the respondent to file a response to DeVivo's petition.  Before that response was filed, however, petitioner filed an amended petition as of right in this matter.  *See* Dkt. No. 7; *see also* Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts; Fed.R.Civ.P. 15(a), 81(a).

In his amended petition, *inter alia*, DeVivo argues that he received

---

[5]      This court was not provided with a copy of an order of the Appellate Division denying any leave application filed by DeVivo regarding the January, 2002 Order.  Respondent has not argued, however, that petitioner failed to exhaust any of his federal habeas claims.  *See* Dkt. No. 17.

the ineffective assistance of counsel in several regards, including: 1) in the manner "outlined in the Writ of Error Coram Nobis"; 2) when both trial and appellate counsel failed to argue that prosecutorial misconduct before the grand jury that indicted DeVivo rendered the indictment void; 3) because trial counsel failed to request that the pretrial *Wade* hearing[6] be re-opened by the County Court; 4) when appellate counsel failed to argue that trial counsel wrongfully failed to request that the *Wade* hearing be re-opened; and 5) when trial and appellate counsel failed to argue that prosecution witness Fullard was improperly allowed to provide identification testimony relating to DeVivo despite a pre-trial ruling prohibiting such testimony.  *See* Amended Petition (Dkt. No. 7) at (unnumbered) 2-6.  In addition to these claims challenging the performance of his trial and appellate counsel, DeVivo also argues that he is entitled to habeas intervention based upon his contention that: 1) law enforcement agents committed perjury at the *Wade* hearing; 2) the indictment was defective because it improperly joined the burglary and perjury charges; 3) he was improperly tried on both the

---

[6]    *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926 (1967).  The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive.  *See Blas v. Herbert*, 2003 WL 22480093, at *3 n.2 (S.D.N.Y. Oct. 31, 2003) (*citing Wade*).

perjury charge and the burglary charge; 4) the trial court improperly allowed the prosecution to use evidence relating to charges dismissed from the indictment in prosecuting DeVivo on the remaining charges; 5) DeVivo was improperly forced to participate in the show-up identification conducted by law enforcement agents on July 26, 1998; 6) the prosecution's summation was improper; 7) the sentence imposed on DeVivo was excessive; and 8) the summary denial of DeVivo's post-trial collateral applications for relief by the state courts was improper.[7] Amended Petition (Dkt. No. 7) at (unnumbered) 7-8.

The New York State Attorney General, acting on respondent's behalf, has opposed the granting of DeVivo's amended petition by filing an answer and a memorandum of law in opposition to that application, arguing that the claims raised in the petition are without merit.  *See* Dkt. Nos. 17, 18.  In his reply memorandum, or "traverse," petitioner essentially reiterates the

_____

[7]    I note that although DeVivo does not specifically delineate each of these claims in his amended pleading, he specifically asks that this court consider "[e]ach and every argument [raised in his] [d]irect [a]ppeal."   Amended Petition (Dkt. No. 7) at (unnumbered) 7.  In light of DeVivo's *pro se* status, I have considered all of the claims asserted by DeVivo on appeal as additional grounds for relief in this matter.  *See Alexis v. Smith*, 03CIV.391, 2003 WL 22434154, at *4 (S.D.N.Y. Oct. 24, 2003) (habeas claims are to be construed liberally in this circuit) (citing *Chambers v. United States*, 106 F.3d 472, 475 (2d Cir. 1997)); *see, e.g.*, *Phillips v. Gordich*, 408 F.3d 124, 130 (2d Cir. 2005) (in construing *pro se* parties' submissions, "the court's imagination should be limited only by [the party's] factual allegations, not by the legal claims set out in his pleadings") (citation omitted).

arguments previously asserted in support of his petition.  *See* Dkt. No. 21.

This matter, which is now ripe for determination, has been referred to

me for the issuance of a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See*

*also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Procedurally Defaulted Claims

A federal habeas court is precluded from reviewing a claim if the

state courts' rejection of the argument rests on "independent and adequate

state grounds."  *Coleman v. Thompson*, 501 U.S. 722, 736, 111 S.Ct. at

2558 (1991); *Jones v. Stinson*, 229 F.3d 112, 117 (2d Cir. 2000).  This

occurs when the last state court rendering a decision in the case held that

its judgment rested on a state procedural bar.  *Harris v. Reed*, 489 U.S.

255, 262, 109 S.Ct. 1038, 1043 (1989); *Jones*, 229 F.3d at 118.

As was noted earlier, DeVivo has requested that this court consider

"[e]ach and every argument" raised in his direct appeal as a basis for

granting his federal habeas petition.  Amended Petition (Dkt. No. 7) at

(unnumbered) 7.  Several of the claims raised by DeVivo in his direct

appeal, however, were deemed by the state appellate court as procedurally

barred.  As a threshold matter, I must examine whether that state court

finding precludes consideration of those forfeited claims on habeas review.

In affirming petitioner's conviction, the Third Department found his

claim that the indictment improperly joined the burglary and criminal

mischief charges with the perjury charge was "not properly preserved."[8]

*DeVivo* 282 A.D.2d at 771, 726 N.Y.S.2d at 147.  A finding that a claim is

not preserved for appellate review is a clear expression of procedural

default regarding such a claim.  See *Udzinski v. Kelly*, 734 F.Supp. 76, 81

(E.D.N.Y. 1990).

In addressing DeVivo's appellate claim that the integrity of the grand

jury proceedings was compromised because the grand jury that returned

the burglary and criminal mischief charges also returned the perjury charge

that arose out of DeVivo's testimony before that same accusatory body,

the Appellate Division similarly found that DeVivo's  "failure to timely submit

a written motion to dismiss on this ground ... waive[d] his right to a

determination of the issue."  *DeVivo* 282 A.D.2d at 772, 726 N.Y.S.2d at

148 (citations omitted).  A finding by a state court that a party waived his or

---

[8]        The Appellate Division noted that to preserve his claim of improper
joinder for appeal, DeVivo was required to have filed a pre-trial motion to sever the
indictment, a step which was not taken in this instance.  *DeVivo*, 282 A.D.2d at 771,
726 N.Y.S.2d at 147 (citations omitted).

her right to appeal an issue constitutes an independent and adequate state procedural ground for the denial of such a claim.  *See Moore v. Senkowski*, No. 97-CV-1237 (Dkt. No. 20), slip op. at 4-5 (N.D.N.Y. Mar. 29, 2002) (Mordue, J.), *aff'd*, *Moore v. Senkowski*, No. 97-CV-1237 (Dkt. No. 30), 72 Fed.Appx. 860 (2d Cir. Sept. 23, 2003) (unpublished); *see also Singh v. Kuhlmann*, No. 94 CIV. 2213, 1995 WL 870113, at *12 (S.D.N.Y. Aug. 25, 1995) ("Appellate Division's judgment that [petitioner] had waived the right to appeal ... rested on adequate and independent state grounds"), *adopted*, 1996 WL 337283 (S.D.N.Y. June 19, 1996); *U.S. ex rel. Hogan v. Bara*, 578 F.Supp. 1075, 1081 (E.D.N.Y. 1984) ("state procedural waiver constituted an independent and adequate state ground" for the Appellate Division's affirmance of the conviction).

DeVivo additionally asserted on appeal, and now argues in this proceeding, that his constitutional right to be free from unreasonable searches and seizures was violated when he was forcibly removed from the Lydia Street apartment on July 26, 1998 and thereafter compelled to participate in the "show up" identification on the sidewalk outside that apartment.  App. Br. at 13; Amended Petition (Dkt. No. 7) at (unnumbered) 7.  In denying this claim in the context of DeVivo's direct appeal, the

14

Appellate Division found the claim to be "unpreserved for review." *DeVivo*

282 A.D.2d at 771, 726 N.Y.S.2d at 147.  That finding constitutes a

procedural denial of a claim by the state court. *Thompson v. Lord*, No. 97-

CV-0792 (Dkt. No. 17), 2002 WL 31678312, at *16 (N.D.N.Y. Nov. 8, 2002)

(Peebles, M.J.), *adopted*, No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept.

25, 2003) (Scullin, C.J.).

Where a state court has clearly and expressly stated that its

judgment rested on a state procedural bar, a federal court may not review

the claim unless the petitioner demonstrates both cause for the procedural

default and resulting prejudice, or alternatively, that a fundamental

miscarriage of justice would occur absent federal court review.[9]  *Dixon*, 293

F.3d at 80-81 (citing *Coleman*); *St. Helen v. Senkowski*, 374 F.3d 181,184

(2d Cir. 2004) ("[i]n the case of procedural default ... [federal courts] may

reach the merits of the claim 'only if the defendant can first demonstrate

either cause and actual prejudice, or that he is actually innocent'") (quoting

*Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611 (1998))

(other citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478,

---

[9]      A fundamental miscarriage of justice exists "where a constitutional
violation has probably resulted in the conviction of one who is actually innocent."
*Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir.), *cert. denied*, 537 U.S. 955, 123 S.Ct. 426
(2002).

495-96, 106 S.Ct. 2639, 2649 (1986); *Garcia v. Lewis*, 188 F.3d 71, 76-77

(2d Cir. 1999); *Fama v. Commissioner of Correctional Services*, 235 F.3d

804, 809 (2d Cir. 2000); *Levine v. Commissioner of Correctional Services*,

44 F.3d 121, 126 (2d Cir. 1995).

DeVivo has failed to establish cause for his procedural default

concerning the foregoing claims.  Although a liberal reading of DeVivo's

amended petition might suggest a claim that his trial counsel rendered

ineffective assistance in failing to preserve these issues for appellate

review, as is discussed more fully below, DeVivo's claims alleging

ineffective assistance are without substance.  Moreover, DeVivo has not

established cause for his failure to assert any of the procedurally defaulted

claims in his *pro se* appellate brief.[10]

I further find that DeVivo has failed to establish that he is actually

innocent of the charges of which he stands convicted.  "To establish actual

innocence, petitioner must demonstrate that 'in light of all the evidence,' 'it

is more likely than not that no reasonable juror would have convicted him.'"

_____

[10]     Although this court was not provided with a copy of DeVivo's *pro se*
appellate brief, the Appellate Division's decision makes it clear that such a brief was
filed by DeVivo.  *See DeVivo* 282 A.D.2d at 772, 726 N.Y.S.2d at 148 (Appellate
Division noting that it "reviewed [DeVivo's] remaining contentions, including those
raised in his pro se appellate brief, and find them to be equally without merit").

16

*Bousley*, 523 U.S. at 623, 118 S.Ct. at 1611 (quoting *Schlup v. Delo*, 513

U.S. 298, 327-28, 115 S.Ct. 851, 867-868 (1995)) (additional citation

omitted).  "Actual innocence means factual innocence, not mere legal

insufficiency."  *Bousley*, 523 U.S. at 623-24, 118 S.Ct. at 1611 (citing

*Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519 (1992)).

The compelling evidence adduced at trial of DeVivo's guilt, as outlined

above, establishes that DeVivo is not innocent of the charges of which he

was convicted.  In light of the foregoing, I recommend that the above-

referenced claims be denied and dismissed as procedurally forfeited.[11]

   B.   <u>Standard of Review Applicable to Remaining Claims</u>

   Enactment of the Antiterrorism and Effective Death Penalty Act of

1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought

about significant new limitations upon the power of a federal court to grant

habeas relief to a state prisoner under 28 U.S.C. § 2254.  A federal court

---

[11]   Respondent has not argued that petitioner is procedurally barred from
asserting these claims.  *See* Dkt. No. 17 at pp. 4-8.  Although a district court can raise
a petitioner's procedural default as a basis for the denial of federal habeas relief, *sua
sponte*, *see*, *e.g.*, *Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000) (citing *Yeatts v.
Angelone*, 166 F.3d 255, 262 (4th Cir. 1999)), the Second Circuit has held that before
a claim in a petition may properly be dismissed on procedural grounds on the court's
own initiative, a district court must afford the petitioner notice of its intention to dismiss
the claim on a procedural basis and an opportunity to be heard.  *Acosta*, 221 F.3d at
124.  Accordingly, if petitioner believes that these claims should not be dismissed as
procedurally defaulted, he must raise this contention in timely-filed objections to this
report and recommendation.

cannot grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
>> 1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> 2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d

Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003);

*Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  The AEDPA also

requires that in any such proceeding "a determination of a factual issue

made by a State court shall be presumed to be correct [and t]he applicant

shall have the burden of rebutting the presumption of correctness by clear

and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry*, 403

F.3d at 66; *Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal

quotations omitted).

 The Second Circuit has provided additional guidance concerning

application of this test, noting that

> [u]nder AEDPA, we ask three questions to

18

> determine whether a federal court can grant habeas
> relief: 1) Was the principle of Supreme Court case
> law relied upon in the habeas petition "clearly
> established" when the state court ruled? 2) If so,
> was the state court's decision "contrary to" that
> established Supreme Court precedent? 3) If not, did
> the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v.*
*Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Because the AEDPA's restriction on federal habeas power is
premised in no small part upon the duty of state courts to uphold the
Constitution and faithfully apply federal laws, the AEDPA's exacting review
standards apply only to federal claims which have been actually
adjudicated on the merits in the state court. *Washington v. Shriver*, 255
F.3d 45, 52-55 (2d Cir. 2001). Accordingly, deference is not mandated
under section 2254(d) if a state court decides the case on a procedural
basis, rather than on the merits. *See Sellan v. Kuhlman*, 261 F.3d 303,
309-10 (2d Cir. 2001).

In *Sellan*, the Second Circuit answered the question of whether
deference under section 2254(d) is mandated if a state court decides a
case without citing to federal law or otherwise making reference to a
federal constitutional claim. Specifically, that court held that deference is

19

required if the federal claim was presented to the state court and there was

an adjudication on the merits, even though the state court's decision lacks

explicit reference to the federal claim or to federal case law.  *Sellan*, 261

F.3d at 311-12.  As the Second Circuit explained, the plain meaning of §

2254(d)(1) dictates that

> [f]or the purposes of AEDPA deference, a state
> court "adjudicate[s]" a state prisoner's federal claim
> on the merits when it (1) disposes of the claim "on
> the merits," and (2) reduces its disposition to
> judgment.  When a state court does so, a federal
> habeas court must defer in the manner prescribed
> by 28 U.S.C. § 2254(d)(1) to the state court's
> decision on the federal claim – *even if the state
> court does not explicitly refer to either the federal
> claim or to relevant federal case law.*"

*Sellan*, 261 F.3d at 312 (emphasis added), *see also Ryan v. Miller*, 303

F.3d 231, 246 (2d Cir. 2002).[12]

When a state court's decision is found to be decided "on the merits",

that decision is "contrary to" established Supreme Court precedent if it

applies a rule that contradicts Supreme Court precedent, or decides a case

---

[12]     In his opinion in *Sellan*, Chief Judge Walker acknowledged that
enlightenment in state court decisions as to the manner of disposition of federal claims
presented would greatly enhance a federal court's ability, on petition for habeas
review, to apply the AEDPA's deference standard.  *Sellan*, 261 F.3d at 312.  He
noted, however, that a state court's failure to provide such useful guidance does not
obviate a federal court's duty to make the analysis and pay appropriate deference if
the federal claim was adjudicated on the merits, albeit tacitly so.  *Id.*

differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1523 (2000)*.* Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable". *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521; *see also Sellan*, 261 F.3d at 315. The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]" *Francis S.*, 221 F.3d at 111.

      C.    <u>Substance of Remaining Claims</u>

           1.    <u>Ineffective Assistance of Trial Counsel</u>

The first four grounds in DeVivo's amended petition allege that he received the ineffective assistance of trial counsel. Amended Petition (Dkt. No. 7) at (unnumbered) 2-6.

In his *coram nobis* application (to which the petitioner refers this court as support for his habeas claim alleging ineffective assistance, *see* Amended Petition (Dkt. No. 7) at (unnumbered) 2), DeVivo argued that trial counsel improperly failed to 1) "raise certain objections for the record;" 2) preserve various legal issues for appellate review; 3) file unspecified

motions with the trial court; 4) seek dismissal of the indictment pursuant to

CPL § 210.35(5); 5) request jury charges relating to the defense of

intoxication and seek instructions to the jury regarding lesser included

offenses; and 6) "motion the court or object to issues which needed to be

addressed."[13]   *See Coram Nobis* Application at 14, 16, 32-33, 57-60.

In addition to the claims raised in his *coram nobis* application

challenging the effectiveness of his trial counsel, DeVivo additionally

contends in his amended petition that his trial attorney's performance was

deficient, in a constitutional sense, because he failed to move to dismiss

the indictment against DeVivo on the grounds that the prosecutor "created

a hostile and biased environment" with respect to the grand jury which

returned the indictment DeVivo.  Amended Petition (Dkt. No. 7) at

(unnumbered) 2-3.  DeVivo also argues that trial counsel improperly failed

to move to re-open the *Wade* hearing after purportedly learning that a

prosecution witness had committed perjury at that hearing.  Amended

---

[13]     A *coram nobis* application is only properly utilized to assert a claim
alleging ineffective assistance of *appellate* counsel.  *See People v. Bachert*, 69 N.Y.2d
593, 595-96 (1987)).  However, in *Aparicio v. Artuz*, 269 F.3d 78 (2d Cir. 2001), the
Second Circuit determined that where a party raises an ineffective assistance of *trial*
counsel claim in a *coram nobis* application, federal courts are to conclude that such
claim was adjudicated on the merits even though such a claim is not properly asserted
in a *coram nobis* application and even where the Appellate Division does not
acknowledge the existence of the trial counsel claim in its order denying the *coram
nobis* application.  *Aparicio*, 269 F.3d at 92-93.

Petition (Dkt. No. 7) at (unnumbered) 4-5.  Finally, petitioner argues that his trial counsel failed to object to identification testimony offered by Fullard at trial despite a pretrial order prohibiting such testimony.  Amended Petition (Dkt. No. 7) at (unnumbered) 5-6.

a.  <u>Clearly Established Supreme Court Precedent</u>

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."  U.S. Const., amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must typically show both a) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and b) resulting prejudice that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688-90, 104 S.Ct. 2052, 2059 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established by the Supreme Court in *Strickland*).  In *Williams*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as "clearly

23

established Federal law[.]"  *Williams*, 529 U.S. at 391, 120 S.Ct. at 1512.

### b.  Contrary to, or Unreasonable Application of, Supreme Court Precedent

As was previously noted, petitioner raised several of his ineffective assistance claims in his June, 2002 *coram nobis* application.  On August 15, 2002, the Appellate Division denied DeVivo's *coram nobis* application. *See* Dkt. No. 30.  I must therefore determine whether that decision is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny.

In his first claim challenging the adequacy of his representation at trial, petitioner argues, without elaboration, that his defense counsel "failed to raise certain objections for the record."  *See Coram Nobis* Application at 14; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9.  In a similar vein, DeVivo claims that his trial attorney failed to "[m]otion the court or object to issues which needed to be addressed."  *See Coram Nobis* Application at 16; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9.

Rule 2(c) of Rules Governing Section 2254 cases requires a habeas petitioner to "specify all grounds for relief which are available" and "set forth in summary form the facts supporting each of the grounds thus

specified."  Moreover, the federal habeas petitioner bears the burden of

proving that his constitutional rights were violated in the state court

proceeding.  *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997)

(citing *Walker v. Johnston*, 312 U.S. 275, 286, 61 S.Ct. 574, 579 (1941))

(petitioner has the burden of "sustaining his allegations by a

preponderance of evidence" on collateral review) (other citations omitted);

*Frazier v. New York*, 187 F.Supp.2d 102, 108 (S.D.N.Y. 2002) (citation

omitted).

The transcript of DeVivo's criminal trial consisted of over 650

transcribed pages, exclusive of closing arguments and jury instructions.

Petitioner's failure to cite specific instances during the course of that

proceeding in support of his claims that his attorney failed to lodge

appropriate objections and/or file relevant motions on petitioner's behalf

represents a failure on his part to both comply with Rule 2(c) of Rules

Governing Section 2254 cases, as well as to shoulder his burden of proof.

*E.g. Vasquez v. McGrath*, No. CIVS021925, 2005 WL 2001020, at *15

(E.D.Cal.  Aug. 19, 2005); *Banks v. New York State Dept. of Correctional

Services*, No. 01 CIV. 3985, 2001 WL 1448612, at *2 (S.D.N.Y. Nov 15,

2001) ("a petition may be dismissed if it contains only vague or conclusory

allegations") (citation omitted); *U.S. ex rel. Johnson v. Tally*, 47 F.Supp.2d 943, 953-54 (N.D.Ill. 1999) (petitioner's failure to provide facts in support of habeas claim renders claim unreviewable by federal district court); *U.S. ex rel. Walls v. DeTella*, No. 94 C 6749, 1997 WL 534287 (N.D.Ill. Aug. 19, 1997) (denying habeas claim where petitioner failed to "identif[y] any facts supporting ... claim in his habeas petition").

Petitioner next contends that his trial counsel failed to "preserve certain legal issues for a possible direct appeal." *See Coram Nobis* Application at 14; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9. In its decision denying petitioner's appeal, the Third Department noted that DeVivo's trial counsel had failed to preserve for appellate review several of the claims that had been raised on appeal by appellate counsel. *See DeVivo*, 282 A.D.2d at 771-72, 726 N.Y.S.2d at 147-48. While at first blush this finding might appear to bolster DeVivo's claim that his trial counsel rendered ineffective assistance, I note that in each instance where the Appellate Division determined that an issue had not been preserved for appellate review by the actions of trial counsel, that court nevertheless alternatively addressed the merits of those claims, in each instance finding no basis upon which to reverse DeVivo's conviction. *See DeVivo*, 282

A.D.2d at 771-72, 726 N.Y.S.2d at 147-48.  Thus, even assuming, *arguendo*, that it was objectively unreasonable for trial counsel to have failed to preserve those issues for appellate review, the Appellate Division's actions in considering – and ultimately finding without merit – those unpreserved claims conclusively establishes that DeVivo was not prejudiced by trial counsel's actions relating to those arguments.

Petitioner additionally faults trial counsel for failing to seek the dismissal of the indictment due prosecutorial misconduct before the grand jury which ultimately indicted him.  *See Coram Nobis* Application at 31-33; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9.  Specifically, petitioner contends that the prosecutor wrongfully sought to indict him for witness tampering despite the fact that "no evidence to support the allegations to [*sic*] the tampering existed."  *Coram Nobis* Application at 31. Petitioner further contends that "[f]abricated bribery charges" were returned by the grand jury.  *Coram Nobis* Application at 31-33; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9.

Just prior to the start of DeVivo's trial, the trial court *sua sponte* reconsidered an order it had previously issued in which it had denied defense counsel's motion to dismiss the indictment "for legal insufficiency

27

and any other defects that may have occurred ... during the grand jury proceedings." *See* App. at AA291-92.  After noting that it had inspected the grand jury minutes (*see* App. at AA291), the court determined that the evidence presented to the grand jury relative to the three counts in the indictment which charged DeVivo with tampering with a witness in the third degree was "insufficient to support those three counts" and accordingly dismissed those charges.  App. at AA292-94.  In similarly dismissing the bribery counts that had been returned against DeVivo, the county court concluded that there was legally insufficient evidence to establish that the letters that formed the basis of those charges were written by DeVivo.  *See* App. at AA302-03, AA311-12.

Since the record reflects that the county court carefully reviewed the charges in the indictment in conjunction with defense counsel's motion to dismiss that accusatory instrument, I find that petitioner has not established that DeVivo's trial counsel rendered ineffective assistance by failing to seek dismissal of the remaining charges in the indictment due to prosecutorial misconduct.  In this regard, I note that the Appellate Division specifically determined that DeVivo failed to make any "specific showing of prosecutorial misconduct" before the grand jury in the context of his direct

appeal.  *DeVivo*, 282 A.D.2d at 772, 726 N.Y.S.2d at 148.

In the final claims relating to the sufficiency of his representation at trial asserted in his *coram nobis* application, DeVivo argues that his trial counsel improperly failed to 1) seek a jury instruction relating to DeVivo's claimed intoxication on the night of the burglary; and 2) request that the county court instruct the jury to consider lesser included offenses during its deliberations.  *Coram Nobis* Application at 57-60; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9.

In claiming that his counsel wrongfully failed to seek an intoxication charge,[14] DeVivo appears to overlook established authority in New York which holds that an intoxication charge should only be provided to the jury where there is "sufficient evidence of intoxication in the record for a reasonable person to entertain doubt as to the element of intent on that basis."  *Brown v. Rick*, No. 01 Civ.4310, 2003 WL 22801397, at *5 (S.D.N.Y. Nov. 25, 2003) (internal quotation and citation omitted). Although DeVivo testified in his own defense at his trial, he never claimed at that time that he was intoxicated on the night of the burglary, and

---

[14]     In New York, intoxication is not defense to a criminal charge; evidence of intoxication of the defendant may be offered, however, whenever it is relevant to negate an element of the crime charged.  *See* N.Y. Penal Law § 15.25.

instead claimed that he was asleep on the couch while the burglary took place.  *See* App. at AA223-40.  Since there was no record evidence which demonstrated that DeVivo was intoxicated on the night of July 26, 1998, there was no legal basis for his attorney to request such a jury instruction.

DeVivo further complains of his trial attorney's failure to request that the county court instruct the jury as to lesser included offenses for consideration during its deliberations.[15]  *Coram Nobis* Application at 59; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9.  In making this argument, DeVivo has not specifically identified any lesser-included offenses which, he contends, should have been brought to the jury's attention prior to deliberations.  As a result of petitioner's omission, I have reviewed New York's penal provisions in an attempt to discern any lesser included offenses that DeVivo may now be claiming should have been charged to the jury.  That review establishes that numerous lesser included offenses might conceivably exist relative to a charge of second degree burglary; in addition to the crime of burglary in the third degree (N.Y. Penal Law § 140.20 ), New York law also provides for various degrees of criminal

---

[15]     This court was not provided with the transcripts of any pre-charge conferences between the parties and the county court, nor was a transcript of the actual jury instructions given by the county court at DeVivo's trial made available in this proceeding.

trespass, which is a lesser included offense of burglary.  *See People v. Bleau*, 276 A.D.2d 131, 132, 718 N.Y.S.2d 453, 454 (3d Dept. 2001) (criminal trespass is a lesser included offense of second degree burglary); *see also* N.Y. Penal Law § 140.17 (criminal trespass in the first degree); N.Y. Penal Law § 140.15 (criminal trespass in the second degree); N.Y. Penal Law § 140.10 (criminal trespass in the third degree); and trespass (N.Y. Penal Law § 140.05).  DeVivo may also be claiming that his attorney should have requested that the jury be charged with criminal mischief in the fourth degree, a lesser included offense of the criminal mischief in the third degree charge.  *E.g.*, *People v. Cammorto*, 185 A.D.2d 986, 987-88, 587 N.Y.S.2d 408, 409 (2d Dept.), *leave denied*, 80 N.Y.2d 1025, 592 N.Y.S.2d 675 (1992).  Finally, perjury in the second and third degrees may be considered lesser included offenses of first degree perjury.  *See* N.Y. Penal L. §§ 210.15, 210.10, 210.05.

It is appropriate to charge a lesser-included offense only when "'(1) it is theoretically impossible to commit the greater crime without committing the lesser and (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense.'"  *Paul v. Kelly*, No. CV 90-1654, 1991 WL 49774, at *5 (E.D.N.Y.

Mar. 26, 1991) (quoting *Rice v. Hoke*, 846 F.2d 160, 165 (2d Cir. 1988)).

In the present action, DeVivo has wholly failed to demonstrate how a

reasonable view of the evidence adduced at trial would have supported

convictions for any of the lesser included offenses referenced above while

at the same time been insufficient to establish his guilt of the crimes

actually charged to the petit jury.[16]  Petitioner has therefore has not

established that the jury should have been instructed as to any of the

lesser included offense noted above.[17]  Based upon the foregoing, I

recommend that this aspect of his petition be denied.

In addition to the bases delineated in his *coram nobis* application,

DeVivo also now claims that his trial attorney failed to argue that the entire

indictment was subject to dismissal because the prosecutor 1) pursued

charges before the grand jury that were not supported by legal evidence;

---

[16]     New York's Court of Appeals has observed that juries cannot "choose between the crime charged and some lesser crime where the evidence essential to support a verdict of guilt of the lesser necessarily proves guilt of the greater crime as well." *People v. Discala*, 45 N.Y.2d 38, 43, 407 N.Y.S.2d, 660, 664 (1978).

[17]     I also find that, as with petitioner's claim that his attorney failed to raise objections or file appropriate motions on petitioner's behalf at trial, DeVivo's failure to provide any factual support for his claim that his trial attorney improperly failed to request that the jury be charged with unspecified lesser included offenses constitutes a failure on DeVivo's part to comply with Rule 2(c) of Rules Governing Section 2254 cases.  *See Vasquez*, 2005 WL 2001020, at *15; *Banks*, 2001 WL 1448612, at * 2; *Tally*, 47 F.Supp.2d at 953-54.

and 2) obtained an indictment charging DeVivo with committing perjury before the same grand jury at which the DeVivo provided the allegedly perjurious testimony, and that through that failure his counsel failed to provide him with constitutionally adequate  representation.  Amended Petition (Dkt. No. 7) at (unnumbered) 9-10.  This claim was unsuccessfully raised by DeVivo in his August, 2000 CPL Motion, *see* August, 2000 CPL Motion, Point Four, which was denied on the merits.[18]  *See* May, 2001 Order.

These arguments, however, overlook the well-settled precedent which establishes that any error in the grand jury proceedings below was necessarily cured by DeVivo's subsequent conviction by a petit jury on the charges contained in that accusatory instrument.  *United States v. Mechanik*, 475 U.S. 66, 70, 106 S.Ct. 938, 941-42 (1986).  Claims based upon trial counsel's alleged ineffectiveness in failing to move to dismiss an

---

[18]     In its May, 2001 order, the county court denied several aspects of DeVivo's August, 2000 CPL Motion as procedurally barred.  *See* May, 2001 Order at 2-4.  That court did not, however, clearly and expressly deny on procedural grounds DeVivo's claim that trial counsel had rendered ineffective assistance by failing to move to dismiss the entire indictment.  *See* May, 2001 Order.  Under such circumstances, I may not properly conclude that this claim was found to be procedurally barred when raised by DeVivo in the state courts.  *See Galdamez v. Keane*, 394 F.3d 68, 77 (2d Cir.), *cert denied sub nom.*, *Galdamez v. Fischer*, ___ U.S. ___, 125 S.Ct. 1996 (2005).  Accordingly, I conclude that such claim was denied by the trial court on the merits.

indictment are therefore not cognizable in federal habeas proceedings. *See Montalvo v. Annetts*, No. 02 CIV.1056, 2003 WL 22962504, at *24-25 (S.D.N.Y. Dec. 17, 2003).

DeVivo next contends, as he did in his September, 2001 CPL Motion, that his trial attorney rendered ineffective assistance in failing to request that the *Wade* hearing be re-opened by the trial court. *See* September, 2001 CPL Motion at 32;[19] Amended Petition (Dkt. No. 7) at (unnumbered) 13. In support of this claim, petitioner argues Cannon's trial testimony established that during the show up identification, he initially failed to identify DeVivo as a suspect, and only made that identification after being subjected to "extremely prejudic[al] and unduly suggestive" tactics. Amended Petition (Dkt. No. 7) at (unnumbered) 11. Petitioner further argues that Cannon's testimony establishes that Officer Smith[20] committed perjury at the pretrial *Wade* hearing conducted by the county court regarding Cannon's identification of DeVivo, *see* Amended Petition (Dkt. No. 7) at (unnumbered) 11-12, and that counsel's failure to request that the

---

[19]   The county court found this aspect of DeVivo's September, 2001 CPL Motion to be without merit. *See* January, 2002 Order at 3.

[20]   Although petitioner does not provide the name of the police officer whom he claims committed perjury at the *Wade* hearing, *see* Amended Petition (Dkt. No. 7) at (unnumbered) 11-12), the record reflects that Officer Smith was the officer who was with Cannon on the night the show up identification was conducted. App. at A8.

*Wade* hearing be re-opened following Cannon's testimony constituted ineffective assistance.  Amended Petition (Dkt. No. 7) at (unnumbered) 13.

Although New York's criminal procedure law authorizes county courts to re-open *Wade* hearings, *see* CPL § 710.10(4),[21] such an application is only appropriate where "the additional information would ... have materially affected the determination of the suppression motion." *People v. Meachem*, 288 A.D.2d 162, 162 733 N.Y.S.2d 354, 354 (1st Dept. 2001) (citing *People v. Clark*, 88 N.Y.2d 552, 647 N.Y.S.2d 479 (1996)), *leave denied People v. Meachem*, 97 N.Y.2d 758, 742 N.Y.S.2d 618 (2002); *People v. Frances*, 270 A.D.2d 36, 37, 704 N.Y.S.2d 561, 561 (1st Dept. 2000) (citations omitted), *leave denied*, 95 N.Y.2d 796, 711

---

[21]    That statute provides, in pertinent part, as follows:

Motion to Suppress Evidence; When Made and Determined

* * * * *

4. If after a pre-trial determination and denial of the motion the court is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion, it may permit him to renew the motion before trial or, if such was not possible owing to the time of the discovery of the alleged new facts, during trial.

CPL § 710.10(4).

35

N.Y.S.2d 164 (2000).  In order to evaluate petitioner's claims against this

backdrop, I have examined the testimony offered at the *Wade* hearing, as

well as the testimony offered by Cannon at DeVivo's trial, to determine

whether a motion to re-open that proceeding was warranted.  That review

does not substantiate petitioner's claim that his attorney rendered

ineffective assistance by failing to file an application to re-open the *Wade*

hearing.  To the contrary, careful review reflects that Cannon's trial

testimony was consistent with the testimony given by Officer Smith at the

*Wade* hearing.

At the *Wade* hearing, Officer Smith testified that on July 26, 1998,

the potential suspects in the Lydia Street burglary, including DeVivo,

voluntarily left the apartment and stood on a sidewalk for purposes of the

show up identification.  App. at A7-8  The following exchange then

occurred between the prosecutor and Officer Smith

> The Prosecutor:  After [you escorted the suspects down from the apartment to the sidewalk], were you with Briton Cannon?
>
> Officer Smith:  Yes, I was.
>
> The Prosecutor:  Did he identify Mr. DeVivo as one of the participants?

36

Officer Smith:      Yes, he did.  Yes, he did.

App. at A8.

At trial, Cannon was questioned about the events leading up to his

identification of DeVivo as a suspect in the burglary.  Specifically, Cannon

testified that while he was sitting in a patrol car on the night of the crime,

law enforcement agents

> asked me if I could identify [DeVivo].  At first,
> because he was so close to the cop car I kept
> saying no because I thought he can see me.  As
> soon as they got him away from the cop car and I
> noticed he didn't look in, I told the cop right away
> "Yes, that is one of them," because I thought he
> could see my face and I was just scared.

App. at A30.

As can be seen, while as DeVivo correctly notes Cannon initially

testified that he did not identify petitioner as one of the perpetrators,

Cannon specifically attributed his failure to initially identify DeVivo as a

suspect to his fear that DeVivo may have observed him in the patrol car

making the identification.  Moreover, Cannon's trial testimony does not

support DeVivo's claim that such witness only identified petitioner as a

suspect due to coaxing on the part of law enforcement agents.  Amended

Petition (Dkt. No. 7) at (unnumbered) 5.  To the contrary, Cannon testified

37

that once he believed DeVivo was unable to observe him in the patrol car, he "told the cop right away 'Yes, [DeVivo] is one of them.'"  App. at A30.

Nor is there record support for DeVivo's claim that Officer Smith committed perjury at the *Wade* hearing.  Rather, my review of the testimony provided at the *Wade* hearing by both Officer Smith and Officer Jack Collins of the Binghamton police department has satisfied me that their testimony was entirely consistent with Cannon's trial testimony. *Compare* App. at AA12-29 *with* Resp. App. at A26-32.

Since petitioner has not established that Cannon's trial testimony provided new information that could have materially affected the county court's earlier determination denying his suppression motion, his trial attorney did not render ineffective assistance by failing to file a motion seeking to re-open the *Wade* hearing.  *E.g. People v. Carroll*, 303 A.D.2d 200, 201, 759 N.Y.S.2d 443, 444 (1st Dept. 2003) (trial counsel not ineffective where there was "no reason to believe that an application to reopen the *Wade* hearing would have ultimately led to suppression of identification testimony"), *leave denied People v. Carroll*, 100 N.Y.2d 560, 763 N.Y.S.2d 817 (2003).  Accordingly, DeVivo is not entitled to habeas relief on this ground.

38

In his final claim challenging the effectiveness of his trial counsel, petitioner argues that the county court issued a pretrial ruling that prohibited prosecution witness Fullard from making an in-court identification of DeVivo.  Amended Petition (Dkt. No. 7) at (unnumbered) 5.[22]  Specifically, DeVivo alleges that Fullard testified before the grand jury that he could not identify petitioner as one of the perpetrators, and that the county court therefore issued a pretrial ruling prohibiting Fullard from offering identification testimony at DeVivo's trial.  Amended Petition (Dkt. No. 7) at (unnumbered) 5-6.  Fullard claims that despite that ruling, the prosecution "trie[d] to elicit false testimony from Fullard about his descriptions of the defendant [on] the night in question."  *Id.* at (unnumbered) 6.

This court was not provided with a copy of the transcript of Fullard's grand jury testimony or the pretrial ruling of the county court wherein Judge Smith is alleged to have ruled that Fullard could not offer identification testimony at trial.  This notwithstanding, even assuming, *arguendo*, that the county court issued such a ruling, I find that the record does not support

---

[22]     While DeVivo raised this claim in his September, 2001 CPL Motion, *see id.* at 13-22, the county court found it to be without merit.  *See* January, 2002 Order at 3.

DeVivo's claim that his trial attorney allowed Fullard to violate the terms of

any such pretrial ruling without objection.  In this regard, I note that the

following colloquy occurred at trial during the course of Fullard's testimony:

| | |
|---|---|
| The Prosecutor: | Can you describe the people that you saw get out of the vehicles? |
| Fullard: | Okay, the one that got out of the truck, one of them – |
| Defense Counsel: | Objection, your Honor. |
| The Court: | And that would be? |
| Defense Counsel: | It's touching upon previous hearings that we have already had rulings on. |
| The Prosecutor: | Don't name any names.  I just said describe. |
| The Court: | Go ahead.  Do you agree? |
| Defense Counsel: | He was on the verge. |
| The Court: | Be careful being on the verge.  Go ahead.  You can describe the individuals.  Go ahead. |
| The Prosecutor: | Describe what you saw. |
| Fullard: | One was kind of tall, had a striped shirt on.  One was short and |

> stocky with a black tank top, big
> head.  There was another one, an
> old man.  I didn't see the driver of
> the truck.

App. at A35-36.

This exchange undermines DeVivo's assertion concerning his counsel's conduct in this regard, revealing that his trial counsel did in fact lodge an objection during the course of the trial when it appeared as though Fullard might provide identification testimony which was inconsistent with the apparent pretrial ruling of the county court on this issue.  Counsel's failure to object to Fullard's subsequent testimony which described in general terms the appearance of the men who burglarized the Lydia Street residence, strongly suggests that such testimony was entirely consistent with the county court's pretrial ruling relating to this issue.  I therefore find that DeVivo has not provided evidence that establishes that his trial attorney allowed Fullard to offer trial testimony that was inconsistent with any pretrial ruling of the county court.

In sum, I find that in each instance where he alleges that his trial counsel rendered ineffective assistance, petitioner has failed to establish that the state courts' rejection of those claims when raised below is either contrary to, or represents an unreasonable application of, *Strickland* and its

progeny.  I therefore recommend that DeVivo's ineffective assistance claims concerning te performance of his trial counsel be denied.

### 2.   Ineffective Assistance of Appellate Counsel

DeVivo next claims that he received the ineffective assistance of appellate counsel.

### a.   Clearly Established Supreme Court Precedent

The Sixth Amendment's right to the effective assistance of counsel has been interpreted to require that indigents be provided with assigned counsel for their first appeal as of right.  *Douglas v. California*, 372 U.S. 353, 358, 83 S.Ct. 814, 817 (1963).  Thus, an individual is entitled to the effective assistance of appellate counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449 n.14 (1970).  The Supreme Court has observed that the proper standard for evaluating a claim that appellate counsel was ineffective is the test enunciated in *Strickland*.  *See Smith v. Robbins*, 528 U.S. 259, 287-89, 120 S.Ct. 746, 765-66 (2000).

### b.   Contrary to, or Unreasonable Application of, Supreme Court Precedent

In his *coram nobis* application, DeVivo alleged that his appellate counsel rendered ineffective assistance because he failed to 1) properly perfect, for purposes of DeVivo's appeal, his claim that the integrity of the

42

grand jury was compromised; 2) buttress DeVivo's appellate claim alleging prosecutorial misconduct with specific examples of such misconduct; 3) argue that DeVivo's trial counsel rendered ineffective assistance by failing to preserve various matters for appellate review; 4) assert "other meterious [*sic*] arguments" in support of a claim alleging ineffective assistance of trial counsel; and 5) raise matters that "needed to be addressed" on appeal. *See Coram Nobis* Application at 14-16; *see also* Amended Petition (Dkt. No. 7) at (unnumbered) 2-6.  Appellate counsel is also alleged by petitioner to have rendered ineffective assistance by failing to assert on appeal that trial counsel rendered ineffective assistance by failing to move to re-open the *Wade* hearing.  Amended Petition (Dkt. No. 7) at (unnumbered) 13.

     With respect to DeVivo's claim that appellate counsel failed to perfect, for purposes of appeal, petitioner's claim that the integrity of the grand jury was compromised, *see Coram Nobis* Application at 14; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9, I note that although that issue was not preserved for appellate review, the Appellate Division nonetheless considered the substance of that claim, ultimately rejecting it because DeVivo had failed to make "a specific showing of prosecutorial misconduct, fraudulent conduct or any other error potentially

43

prejudicing the Grand Jury's ultimate decision." *DeVivo*, 282 A.D.2d at 772, 726 N.Y.S.2d at 148.  Nowhere in its decision did that court suggest that the issue was not properly briefed by appellate counsel.  Thus, this claim does not afford DeVivo a basis for habeas relief.

DeVivo next argues that his appellate attorney failed to include in his appellate brief "specific showings of prosecutorial misconduct," apparently relating to the grand jury proceedings.[23]  *Coram Nobis* Application at 15; Amended Petition (Dkt. No. 7) at attached (unnumbered) 9-10.  As I have just noted, however, the Appellate Division specifically determined that the prosecution did not engage in misconduct before the grand jury.  *DeVivo*, 282 A.D.2d at 772, 726 N.Y.S.2d at 148. Thus, to the extent that this portion of DeVivo's claim is premised on that alleged misconduct, it is without record support.[24]

Addressing his next contention, I find that petitioner has failed to articulate the "meritorious arguments" his appellate attorney purportedly

---

[23]   This aspect of DeVivo's ineffective assistance claim immediately follows his argument that the prosecutor engaged in misconduct before the grand jury. Amended Petition (Dkt. No. 7) at (unnumbered) 9-10.

[24]   Viewing this claim as a broad challenge to the actions of the prosecutor over the entire course of DeVivo's trial, I find that such a claim is without substance for the reasons stated later on in this report in the context of DeVivo's claim specifically alleging prosecutorial misconduct.  *See* pp. 52-55, *post*.

failed to advance on appeal, *see Coram Nobis* Application at 15; Amended

Petition (Dkt. No. 7) at attached (unnumbered) 9, or outline to the court the

appellate issues that he contends "needed to be addressed" by appellate

counsel but were not. *Coram Nobis* Application at 16; Amended Petition

(Dkt. No. 7) at attached (unnumbered) 9. DeVivo's failure to supply the

court with facts supporting these claims constitutes both a failure on his

part to comply with Rule 2(c) of Rules Governing Section 2254 cases as

well as an inability to shoulder his burden of proof relating to these claims.

*Vasquez*, 2005 WL 2001020, at *15; *Banks*, 2001 WL 1448612, at * 2;

*Tally*, 47 F.Supp.2d at 953-54.

　　DeVivo also asserts that his appellate counsel wrongfully failed to

argue on appeal that his trial counsel rendered ineffective assistance by

failing to preserve several matters for appellate review. *Coram Nobis*

Application at 14; Amended Petition (Dkt. No. 7) at attached (unnumbered)

9. As I noted earlier in the context of DeVivo's challenge to trial counsel's

performance, however, in each instance where the Appellate Division

determined that trial counsel failed to preserve an issue for appellate

review, that court nonetheless went on to address and reject the merits of

the unpreserved claims. *See DeVivo*, 282 A.D.2d at 771-72, 726 N.Y.S.2d

at 147-48.  Thus, this theory does not afford DeVivo a basis for habeas relief.

Finally, since I have already recommended that trial counsel not be found to have rendered ineffective assistance, I likewise conclude that petitioner's claims that appellate counsel rendered ineffective assistance by failing argue on appeal that trial counsel was deficient, *see* Amended Petition (Dkt. No. 7) at (unnumbered) 10-13, are without substance.  *E.g. Keith v. Artuz*, No. 99-CV-1778, Dkt. No. 23, slip op. at 28 (N.D.N.Y. Feb. 5, 2004) (DiBianco, M.J.) (citing *McDonald v. Smith*, 2003 WL 22284131, at \*15 (E.D.N.Y. Aug. 21, 2003), *adopted Keith v. Artuz*, Dkt. No. 26 (N.D.N.Y. Mar. 12, 2004) (McAvoy, S.J.), *appeal dismissed*, *Keith v. Artuz*, No. 04-1730pr (2d Cir. Mar. 17, 2005).

In sum, I conclude that DeVivo has failed to establish that his appellate counsel rendered ineffective assistance.  He has therefore necessarily failed to demonstrate that the Appellate Division's decision denying his ineffective assistance claim is either contrary to, or represents an unreasonable application of, the relevant Supreme Court precedent noted above.

3.    Trial Court Error

Petitioner next alleges that the trial court erred when it allowed the prosecution to offer at trial evidence relating to crimes originally charged in the indictment returned against DeVivo but dismissed by the county court prior to trial.  Amended Petition (Dkt. No. 7) at (unnumbered) 7; *see also* App. Br. at 8-10.

a. Appropriate Standard of Review

Historically, when evaluating convictions in the face of collateral habeas challenges alleging error on the part of a trial court, habeas courts have inquired whether the trial court's error had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 1721 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253 (1946)) (other citation omitted).  Following the enactment of the AEDPA, however, it remained an "open question" in the Second Circuit whether the applicable test on federal habeas review of a state court conviction remains the one set forth in *Brecht*, or instead should be based upon a determination of whether the state court's decision was contrary to, or involved an unreasonable application of *Chapman v. California*, 386 U.S.

47

18, 87 S.Ct. 824 (1967).[25]  *See Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005) (citation omitted); *Harvall v. Phillips*, No. 03-CV-2968, 2005 WL 2095725, at *8 (E.D.N.Y. Aug. 30, 2005).

In *Gutierrez v. McGinnis*, 389 F.3d 300 (2d Cir.2004), the Second Circuit resolved one aspect of this question by holding that when a state court explicitly conducts harmless error review of a claimed constitutional error, a federal habeas court must evaluate whether the state courts unreasonably applied *Chapman*.  *See Gutierrez*, 389 F.3d at 306; *see also Zappulla v. New York*, 391 F.3d 462, 467 (2d Cir. 2004).  Where, however, as in the instant case, the state court did not engage in a harmless error analysis, the Second Circuit has not yet decided whether the *Chapman* or *Brecht* tests is to be applied.  *See Gutierrez*, 389 F.3d at 306-07 & n.7; *Ellis v. Phillips*, No. 04CIV.7988, 2005 WL 1637826, *24 n.45 (S.D.N.Y. July 13, 2005) (Peck, M.J.) (collecting cases); *Holmes v. Artus*, No. 03CIV.7065, 2005 WL 1027195, at *18 (S.D.N.Y. May 4, 2005) (citing *Gutierrez*, 389 F.3d at 306; *Benn*, 402 F.3d at 105 (other citation omitted).  In view of the uncertainty within this circuit, I will examine the issue now

---

[25]     In *Chapman*, the Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.*, 386 U.S. at 24; 87 S.Ct. at 828.

raised by petitioner regarding this claim utilizing both standards.

b.    Consideration of DeVivo's Claim in Light of
*Chapman* and *Brecht*

In considering DeVivo's claim that the trial court improperly allowed the prosecution to introduce evidence at trial that related to crimes which had been charged but later dismissed by the county court, the Appellate Division did not engage in harmless error analysis, instead finding that "[e]vidence of such conduct [was] highly probative and was properly admitted as it was indicative of [DeVivo's] consciousness of guilt." *DeVivo* 282 A.D.2d at 772, 726 N.Y.S.2d at 148.  I must therefore consider whether this finding represented error that had a substantial and injurious effect or influence in determining the jury's verdict, or, alternatively, whether the county court's evidentiary ruling relating to that evidence was error that was not harmless beyond a reasonable doubt.

DeVivo argued on appeal that the trial court improperly allowed numerous trial witnesses to testify that petitioner had threatened or coerced them to falsely claim that DeVivo did not participate in the burglary of the Lydia Street apartment.  *See* App. Br. at 11-12; *see also* App. at AA50-52, AA73, AA78-79, AA86-88, AA90-91; AA93-96; A132-35. Although petitioner correctly argues that the testimony of these witnesses

49

at times  related to charges that were ultimately dismissed by the county

court prior to trial, he fails to acknowledge that when the county court

dismissed those charges, it *specifically noted* that the prosecution could

use evidence relating to those dismissed charges in its case-in-chief

against DeVivo, since the relevant conduct also could be viewed as

constituting evidence of a common scheme and plan on the part of DeVivo

to avoid culpability on the burglary and criminal mischief charges.  Resp.

App. at AA13-17.  Thus, for example, in ruling that the letters written by

DeVivo to individuals in an effort to secure their favorable testimony at his

criminal trial could be used by the prosecution despite the fact that the

tampering with a witness charges had been dismissed, the trial court

observed, without objection by defense counsel, that there was "[n]o

question" that the evidence relating to the letters was admissible.  Resp.

App. at A17.

In New York, it is well settled that acts which tend to establish a

criminal defendant's consciousness of guilt may properly be admitted into

evidence even where such evidence may relate to uncharged crimes.  *See*

*U.S. ex rel. Holliday v. Adams*, 443 F.2d 7, 7 (2d Cir.1971) (no error where

trial court admitted evidence of a second assault upon the victim of the

assault for which appellants were on trial; prosecution claimed that "the second assault was instigated by [individuals] in an effort to prevent the victim of the original assault from testifying at the trial"); *Spruill v. Phillips*, No. 04 CV 1382, 2005 WL 1743828, at *6 (E.D.N.Y. July 25, 2005) (testimony relating to uncharged crime regarding threat made by petitioner to fellow inmate was properly admitted as evidence of petitioner's consciousness of guilt); *Velilla v. Senkowski*, No. 02-CV-6458, 2003 WL 23198791, at *11 (E.D.N.Y. Oct. 30, 2003) (evidence that petitioner offered individual money and return of his stolen property on condition that witness abandon the prosecution of the defendant properly admitted as proof of petitioner's consciousness of guilt); *see also People v. Rodriguez*, 306 A.D.2d 686, 687-88, 761 N.Y.S.2d 368, 370-71 (3d Dept.), *leave denied*, 100 N.Y.2d 624, 767 N.Y.S.2d 407 (2003).

Since petitioner has not demonstrated that the admission of the evidence relating to the dismissed charges was erroneous in any way, *a fortiori* he has failed to establish that the admission of such evidence had a substantial and injurious effect or influence in determining the jury's verdict, or, alternatively, that the claimed error was not harmless beyond a reasonable doubt. Accordingly, I recommend the denial of this aspect of

DeVivo's petition.

### 4.   Prosecutorial Misconduct

DeVivo next argues that the prosecution engaged in misconduct during the course of the criminal trial and in its closing argument. Amended Petition (Dkt. No. 7) at (unnumbered) 7; App. Br. at 11-12.

### a.   Clearly Established Supreme Court Precedent

A criminal defendant's fundamental right to a fair trial is guaranteed by the Due Process Clause of the United States Constitution. *Albright v. Oliver*, 510 U.S. 266, 273 n.6, 114 S.Ct. 807, 813 n.6 (1994) (citing *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399 (1976)). Quite obviously, prosecutorial misconduct is a matter which brings into play the constitutional mandate of a fair trial. For federal habeas relief to be granted based on a claim of prosecutorial misconduct, however, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)). In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219,

52

102 S.Ct. 940, 947 (1982).  The law applicable to claims alleging

prosecutorial misconduct is clearly established.  *See Davis v. Keane*, 97

CIV. 8328, 2000 WL 1041454, at *7-8 (S.D.N.Y. July 28, 2000) (citing

*United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044 (1985) and

Donnelly, 416 U.S. at 642-43, 94 S.Ct. 1868, 1871)); *see also Flores v.*

*Keane*, 211 F.Supp.2d 426, 438 (S.D.N.Y. 2001).

> b.    Contrary To, or Unreasonable Application of,
>       Supreme Court Precedent

Petitioner's claim of prosecutorial misconduct was presented to the

Third Department, which, while not specifically discussing the issue,

rejected DeVivo's "remaining contentions ... find[ing] them to be equally

without merit."  *DeVivo* 282 A.D.2d at 772, 726 N.Y.S.2d at 148.  I

therefore must determine whether that determination of the Appellate

Division is contrary to, or represents an unreasonable application of, the

above-referenced Supreme Court precedent.

DeVivo initially argues that the prosecutor improperly attempted to

elicit hearsay evidence from prosecution witnesses Tina Clark and Officer

Smith.  Amended Petition (Dkt. No. 7) at (unnumbered) 14; App. Br. at 14;

*see also* App. at AA 212.  Careful review of the record, however, reveals

that the trial court sustained defense counsel's objections to those portions

53

of the trial testimony in which the prosecution attempted to elicit hearsay

evidence.  *See* App. at AA 115, 212.  With respect to DeVivo's claim that

the prosecution "devoted an inordinate percentage" of its case-in-chief to

the perjury and witness tampering charges that were dismissed by the trial

court, *e.g.* App. Br. at 14, I find this claim to be without merit because, as

was noted earlier, that evidence was probative of the charges in the

indictment on which DeVivo was being criminally tried.

DeVivo also claims that the prosecution's summation was improper.

Amended Petition (Dkt. No. 7) at (unnumbered) 7; App. Br. at 14.  For

DeVivo to prevail on this claim, however, I must be satisfied that the

prosecutor's conduct was "so egregious as to violate the defendant's due

process rights."  *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998).

To warrant habeas intervention, DeVivo "must show 'that he suffered

actual prejudice because the prosecutor's comments during summation

had a substantial and injurious effect or influence in determining the jury's

verdict.'"  *Tankleff*, 135 F.3d at 252 (quoting *Bentley v. Scully*, 41 F.3d 818,

824 (2d Cir. 1994), *cert. denied*,  516 U.S. 1152, 116 S.Ct. 1029 (1996));

*see also Copeland v. Walker*, 258 F.Supp.2d 105, 131-32 (E.D.N.Y.  2003)

(citing *Tankleff*).  Relevant factors in this determination include the severity

of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of conviction absent the prosecutor's remarks. *Bentley*, 41 F.3d at 824; *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990); *Palmer v. Senkowski*, No. 99 CIV. 9634, 2002 WL 54608, at *4 (S.D.N.Y. Jan 15, 2002); *see also Darden*, 477 U.S. at 181-83, 106 S.Ct. 2464; *Donnelly*, 416 U.S. at 644-47, 94 S.Ct. at 1872-73.

In conjunction with this claim, I have reviewed the portions of the prosecution's summation submitted by DeVivo's appellate counsel to the Appellate Division in support of this aspect of DeVivo's appeal. *See* App. at AA270-90. That review has satisfied me that the comments made during the prosecution's summation did not deprive DeVivo of his constitutional right to a fair trial. Since petitioner has not established that the Appellate Division's denial of this aspect of his appeal is contrary to, or unreasonable application of, the above-referenced Supreme Court precedent, I recommend that this ground in his petition be denied.

      5.   <u>Joint Trial</u>

Petitioner also argues that his joint trial on the burglary and perjury charges deprived him of his right to a fair trial. Amended Petition (Dkt. No.

55

7) at (unnumbered) 14; App. Br. at 8-9.

a.   Clearly Established Supreme Court Precedent

The Sixth Amendment provides that in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury."  U.S. Const. Amend. VI.  "The right to a fair trial has been called "the most fundamental of all freedoms.'"  *Estes v. Texas*, 381 U.S. 532, 540, 85 S.Ct. 1628, 1631 (1965); *see also*, *Albright*, 510 U.S. at 273 n.6, 114 S.Ct. 807, 813 n.6 (a criminal defendant's right to a fair trial is mandated by the Constitution) (citing *Agurs*, 427 U.S. at 107, 96 S.Ct. 2392, 2399); *Taylor v. Hayes*, 418 U.S. 488, 501-02, 94 S.Ct. 2697, 2704-05 (1974). Nevertheless, where a habeas petitioner claims that he was denied his right to a fair trial, a federal habeas court's reviewing power is "the narrow one of due process ... not the broad power that [it] would possess in regard to [its] own trial court."  *See Donnelly*, 416 U.S. at 642, 94 S.Ct. at 1871. With respect to the joinder of claims in an indictment, the Supreme Court has clearly established that the convenience of trying different crimes against the same person is a valid governmental interest, and therefore justified under the Constitution.  *Spencer v. Texas*, 385 U.S. 554, 562, 87 S.Ct. 648, 653 (1967).  Thus, to prevail upon a claim alleging improper

56

joinder of charges in an indictment, the party must demonstrate that the joinder denied the defendant of his constitutional right to a fair trial.  *See*, *e.g.*, *United States v. Lane*, 474 U.S. 438, 446 n.8, 106 S.Ct. 725, 730 n.8 (1986).

b.    Contrary To, or Unreasonable Application of, Supreme Court Precedent

In denying this aspect of DeVivo's appeal, the Appellate Division determined that the disputed offenses "were properly joinable" under New York's relevant procedural provisions because "proof of the acts alleged in the burglary and criminal mischief charges would be material and admissible to establish the perjury charge."  *DeVivo* 282 A.D.2d at 771, 726 N.Y.S.2d at 147 (citations omitted).  That court further found that the proof relating to DeVivo's grand jury testimony "was uncomplicated and easily segregable such that it was unlikely that the jury was unable to consider the perjury testimony separately from the testimony relating to the other offenses."  *Id.* (citation omitted).

In support of his petition, petitioner has not presented any evidence which suggests that his joint trial on the burglary and perjury charges deprived him of his right to a fair trial.  As the Appellate Division correctly noted, proof of the acts relating to the burglary and criminal mischief

57

charges was both material and necessary to establish that DeVivo committed perjury before the grand jury, thereby justifying the joint trial. *Spencer*, 385 U.S. at 562, 87 S.Ct. at 653.  Nor has DeVivo demonstrated any prejudice arising from the joinder of those claims in the criminal matter below, a fact that is fatal to this claim.  *Herring v. Meachum*, 11 F.3d 374, 377-78 (2d Cir. 1993) (citations omitted).

Since petitioner has not established that the Appellate Division's decision denying this aspect of his appeal (*DeVivo* 282 A.D.2d at 771, 726 N.Y.S.2d at 147) is either contrary to, or represents an unreasonable application of, the Supreme Court precedent noted above, I recommend that this aspect of his petition be denied.  *See Willis v. Duncan*, No. 00-CV-4171, 2003 WL 21845664, at *5-6 (E.D.N.Y. Aug. 4, 2003); *Scott v. Kelly*, No. 98-CV-811, 1999 WL 1390251, at *4 (W.D.N.Y. Aug. 24, 1999).

### 6.  Fourth Amendment Claim

Petitioner next argues that his removal from the Lydia Street apartment on July 26, 1998, as well as his participation in the "show up" identification procedure employed by law enforcement agents, violated his constitutional rights.  Amended Petition (Dkt. No. 7) at (unnumbered) 14; App. Br. at 13.

58

In this circuit, the merits of a Fourth Amendment claim asserted by way of federal habeas petition may only be properly reviewed by a federal district court where 1) the state has provided no corrective procedures to redress the alleged Fourth Amendment violations; or 2) the state has provided a corrective mechanism, but the petitioner was precluded from availing himself or herself of the procedure due to an unconscionable breakdown in the underlying process. *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992*) (citing *Stone v. Powell*, 428 U.S. 465, 481-82, 96 S.Ct. 3037, 3046 (1976)); *see also Martinez v. Senkowski*, No. 6:97-CV-624, 2000 WL 888031, at *7 (N.D.N.Y. June 28, 2000) (Scullin, C.J.).  Accordingly, in order to establish a legal basis for this court's review of his Fourth Amendment claims, DeVivo must demonstrate that he was precluded from fully and fairly litigating those claims in the state courts. *Chavis v. Henderson*, 638 F.2d 534, 538 (2d Cir. 1980), *cert. denied*, 454 U.S. 842, 102 S.Ct. 152 (1981); *Devino v. Duncan*, No. 01 CIV. 9044, 2004 WL 884961, at *4  (S.D.N.Y. Apr. 23, 2004); *Holmes v. Scully*, 706 F.Supp. 195, 200-01 (E.D.N.Y. 1989) (federal claim premised upon failure to suppress evidence obtained during alleged unlawful detention of petitioner prohibited under *Stone*); *Morales v. Walsh*, No. 02-CV-6045, 2003 WL

23185770, at *15 (E.D.N.Y. Oct. 30, 2003) ("*Stone v. Powell* applies to all

Fourth Amendment claims – including claims of arrest without probable

cause – and regardless of the nature of the evidence that the defendant is

seeking to suppress"); *Montalvo*, 2003 WL 22962504, at *16 (citing *Chavis*)

(other citations omitted).

The Appellate Division noted that DeVivo did not pursue any Fourth

Amendment claim in the state courts.  *See DeVivo* 282 A.D.2d at 771, 726

N.Y.S.2d at 147.  Petitioner is nevertheless still precluded from asserting

these claims in this matter; the *Stone* doctrine precludes federal review of

Fourth Amendment claims even where the defendant chooses not avail

himself or herself of the opportunity to litigate such claims in the state

courts.  *See Crawford v. Artuz*, 165 F.Supp.2d 627, 637 (S.D.N.Y. 2001)

("[petitioner's] failure to employ [CPL] § 710 precludes this court from

considering his Fourth Amendment claim").  Since DeVivo has failed to

establish that he was precluded from pursuing his Fourth Amendment

claim in the trial court due to "an unconscionable breakdown in the

underlying process" relating to his claim, I recommend that petitioner's

habeas claim based upon an alleged violation of his Fourth Amendment

rights be denied under *Stone*.

7.    Excessive Sentence

Petitioner also alleges that the sentence imposed on him was excessive.  Amended Petition (Dkt. No. 7) at (unnumbered) 14; App. Br. at 15-17.  Specifically, DeVivo argues that he was convicted of "thrashing ... an apartment," and that therefore he should have been sentenced to "no more than the minimum sentence for a predicate felon."  App. Br. at 15.

This claim, however, fails to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F.Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see also Brown v. Donnelly*, 371 F.Supp.2d 332, 343-44 (W.D.N.Y. 2005); *Jackson v. Lacy*, 74 F.Supp.2d 173, 181 (N.D.N.Y. 1999) (McAvoy, C.J.) ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law").  DeVivo has never alleged, in the state courts or this proceeding, that the sentences imposed on him for his crimes exceeded the sentences allowed by law.

_____Arguably, this ground could be construed as a claim that the sentences imposed constitute a violation of the Eighth Amendment to the

United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271, 100 S.Ct. 1133, 1138 (1980).  I note, however, that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272, 100 S.Ct. at 1138; *see Harmelin v. Michigan*, 501 U.S. 957, 995, 111 S.Ct. 2680, 2701-02 (1991) (Eighth Amendment only forbids only sentences which are "grossly disproportionate" to the crime).  A sentence of imprisonment which is within the limits of a valid state statute, however, is simply not cruel and unusual punishment in the constitutional sense.  *See Lutes v. Ricks*, No. 02CV1043, 2005 WL 2180467, at *13 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citations omitted).

DeVivo has not provided anything in support of his petition which indicates that the sentence imposed on him for crimes is "grossly disproportionate" to that crime.  *E.g.*, *Harmelin*, 501 U.S. at 995, 111 S.Ct. at 2701-02.  I therefore find no basis upon which I may properly find that he is entitled to habeas relief due to the sentence he received for his crime, and I accordingly recommend that this claim be denied.

8.    Failure of Courts to Articulate Legal Basis for Decisions

Lastly, DeVivo argues that both the trial and appellate courts failed to provide a "detailed explanation to [*sic*] why the motions were denied." Amended Petition (Dkt. No. 7) at (unnumbered) 14-15.

Assuming this claim to be exhausted, I find that the decisions of both the Appellate Division and the trial court addressing DeVivo's numerous challenges to his conviction belie DeVivo's claim that the decisions of the state courts summarily denied DeVivo's applications without "conclusions of law or fact." Amended Petition (Dkt. No. 7) at (unnumbered) 15. I therefore recommend that this final, unsubstantiated claim be denied.

IV.   SUMMARY AND RECOMMENDATION

In sum, the record before the court firmly establishes that DeVivo has procedurally defaulted on several of the claims asserted in his amended petition. Since petitioner has not shown cause for his procedural default relating to these claims or that he is actually innocent of the crime of which he was convicted, I find that these aspects of DeVivo's petition to be procedurally barred and accordingly recommend the denial of these claims on that basis. Applying the required, deferential standard of the AEDPA to the remaining aspects of his habeas application, I recommend that all such

claims be denied on the merits.  It is therefore hereby

RECOMMENDED, that the petition in this matter be DENIED and

DISMISSED in its entirety.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten

(10) days within which to file written objections to the foregoing report-

recommendation.  Any objections shall be filed with the clerk of the court.

FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL

PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this

report and recommendation upon the parties by regular mail.

David E. Peebles
U.S. Magistrate Judge

Dated:        October 19, 2005
                 Syracuse, NY

G:\prisoner\DeVivo.wpd